IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EUGENE EDWARD PATTERSON, | ) | |
| Petitioner, | ) | Civil Action No. 12-40 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| COMMONWEALTH OF | ) | |
| PENNSYLVANIA, | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that Respondents' motion to dismiss be granted, that the petition for a writ of habeas corpus be denied, and that a certificate of appealability be denied.

**II.    REPORT**

**A.    Relevant Background**

Patterson is challenging the judgment of sentence of life imprisonment entered by the Court of Common Pleas of Erie County on February 17, 1989. The Superior Court of Pennsylvania summarized the evidence introduced at his trial as follows:

> The victim, ten-year-old Christine "Tina" Watson, and six-year-old Thomas Levis were playing near a bridge over Walnut Creek in their rural neighborhood in Erie County on July 19, 1966. Thomas Levis stated that a white male of medium build with a slight beard in a white checked shirt approached them, asking them to help him catch minnows around a bend in the stream. He also offered them chewing gum. The victim accompanied the man around a bend in the stream just north of the bridge, but Thomas Levis declined. The victim's sister and a friend, Mary Beth, arrived within minutes seeking Tina since she was late for lunch. Thomas Levis informed them that Tina had accompanied a stranger around the bend. The girls called for Tina and tried to find her in the woods without success. Mary Beth was startled by a man in a red checked shirt with facial hair and an angry expression who rushed from behind nearby bushes. They then heard him depart rapidly from the area in his automobile, tires screeching.

1

The police were summoned when Tina was not found.  One of the first to arrive, Patrolman Hammer, discovered the girl three hundred yards downstream from the bridge behind a tall bush, with her throat slashed.  The police secured the area and the coroner was summoned.  When the body of the victim was moved, those present observed a six-pointed star toy "deputy" badge under her.  The coroner later removed hair and particles from the girl's hand and fingernails, but the results of the tests that he performed were inconclusive.

Police placed roadblocks in the area to inquire of motorists if they had observed a man or a parked automobile near the bridge.  Those who responded affirmatively remembered a shiny black late-model car parked on a dirt berm near the bridge.  Based on Mary Beth's description of the man and the descriptions of the car by motorists, police questioned appellant since he both matched Mary Beth's description and his automobile was a black late-model vehicle.  While appellant was being questioned in a room with numerous plain clothes officers, Thomas Levis identified him positively from behind a glass window, stating "Yes, that's the man but his hair is different, he bleached it."  Notes of Testimony ("N.T."), 1/10/89 at 34.  However, appellant denied any knowledge of the crime and was released.

During questioning by police, appellant had denied the charges and stated that he had quit his job earlier that morning and had gone fishing within a twenty minute drive of the murder scene.  In the early afternoon, he had his hair cut and shaved.  He subsequently showered and washed his clothes.  Later in the afternoon, he picked up his wife from work.  Police requested that he give them the clothes that he had worn earlier in the day and sought permission to search his automobile.  Appellant consented to the search, but it revealed nothing.  However, a number of people who viewed his automobile that night identified it as identical to the one that had been parked next to the bridge on the day of the murder.  Two days later, police obtained fragments of the clothing that appellant had been seen burning following the murder in an open field owned by his father.  Appellant explained that he burned some of his clothes and old shoes because they were covered with fish blood. N.T., 1/12/89, at 42.

Five days later, police utilized the victim's and appellant's clothing along with a volunteer dog-handler, to track the scent of the victim and appellant at the murder scene.  Testimony revealed that the dogs tracked the victim to the scene of the killing and then tracked appellant's scent from the bridge to close to the scene.

Finally, trial evidence revealed that Reverend Merle Dickson, who previously had been assigned by the court to counsel appellant after his unrelated arrests for indecent exposure, telephoned the police to warn them that he would bring appellant to the station since appellant desired to confess to the murder.  Appellant, however, subsequently changed his mind.

2

Commonwealth v. Patterson, 572 A.2d 1258, 1261-62 (Pa.Super. 1990). The Superior Court also explained the 22-year delay in prosecuting Patterson for Tina Watson's murder:

> The record establishes that appellant was prosecuted when two events occurred: another prime suspect was absolved and a witness suddenly linked appellant to the toy sheriff badge found under the victim's body. We find no factual support for appellant's assertion that the delay in bringing him to trial was deliberate or purposeful. The Commonwealth made a reasonable investigation in 1966 but failed to substantiate appellant's presence at the scene of the murder. The decision to reopen the investigation after elimination of another prime suspect resulted in a witness recalling that he had noticed a toy badge in appellant's home and in appellant's chest pocket on another occasion.

Id. at 1263.

At the conclusion of Patterson's trial, the jury found him guilty of Tina Watson's murder. On February 17, 1989, the trial court sentenced him to a term of life imprisonment.

Patterson appealed his judgment of sentence to the Superior Court of Pennsylvania. On April 6, 1990, the Superior Court affirmed. Patterson, supra. The Supreme Court of Pennsylvania denied Patterson's petition for allowance of appeal on May 23, 1991. Commonwealth v. Patterson, 592 A.2d 1299 (Pa. 1991).

In 1992, Patterson filed a motion for post-conviction relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. Daniel Brebender, Esquire, was appointed to represent him. [ECF No. 6 at 3]. The PCRA Court denied Patterson relief. On May 22, 1994, the Superior Court denied his subsequent appeal. Patterson did not pursue further state-court appeals at that time, nor did he seek habeas relief in federal court. [ECF No. 13, ¶ 7].

Almost two decades later, on December 22, 2011, Patterson filed a second PCRA motion. The PCRA Court denied it as untimely in January 2012. [ECF No. 13, ¶ 7]. Patterson did not file an appeal with the Superior Court.

3

On or around January 31, 2012, Patterson filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). He raises two claims. In his first claim, he contends that the trial court should have changed the venue due to the prejudicial pre-trial publicity. He raised this claim in his direct appeal and the Superior Court denied it. Patterson, 572 A.2d at 1267-68. In his second claim, he appears to be challenging the PCRA Court's decision to deny his request for DNA testing, which he apparently made during his second PCRA proceeding. According to Respondents "there are no samples available to be tested given the age of the case." [ECF No. 13, ¶ 9].

Pending before the Court is Respondents' motion to dismiss. [ECF No. 13]. They argue that the Court must dismiss the petition because it is untimely under the statute of limitations set forth in AEDPA, which is codified in relevant part at 28 U.S.C. § 2244(d). Patterson filed a Reply [ECF No. 14] in which he addresses the merits of his claims. He does not provide a defense to Respondents' contention that the petition is time-barred.

### B. Discussion

AEDPA requires, with a few exceptions not applicable here, that habeas corpus petitions under 28 U.S.C. § 2254 be filed within one year of the date the petitioner's judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A).[1] Because Patterson's judgment of sentence became final prior to the April 24, 1996, effective date of AEDPA, he had one year from that date – until on or before **April 23, 1997** – to file a timely habeas petition. Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998). His January 2012

---

[1] Patterson does not allege that he is entitled to take advantage of any of the other provisions triggering the one-year limitations period. He did not suffer any impediment to filing his federal petition. 28 U.S.C. § 2244(d)(1)(B). His claims are not based on a new constitutional right recognized by the U.S. Supreme Court and made retroactive to cases on collateral review. Id. at § 2244(d)(1)(C). He has not shown that his claims are based upon a factual predicate that could not have been discovered through the exercise of due diligence. Id. § 2244(d)(1)(D).

habeas petition was filed more than 14 years after AEDPA's statute of limitations expired and, therefore, is clearly time-barred.[2]

Based upon all of the foregoing, Respondents' motion to dismiss should be granted. They are correct that the petition is untimely.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether the petition should be denied as untimely. Accordingly, a certificate of appealability should be denied.

---

[2] The U.S. Supreme Court has held that AEDPA's statute-of-limitations period "is subject to equitable tolling in appropriate cases." Holland v. Florida, — U.S. — , 130 S.Ct. 2549, 2560 (2010). A petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. Id. at 2562. See also Munchinski v. Wilson, 694 F.3d 308, 329-32 (3d Cir. 2012). "This conjunctive standard requires showing *both* elements before we will permit tolling." Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012) (emphasis in original). Patterson does not argue that equitable tolling applies to this case, and he has not directed the Court to anything which would indicate that equitable tolling would be appropriate here. [See ECF No. 6 at 13-14; ECF No. 14].

5

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Respondents' motion to dismiss [ECF No. 13] be granted, that the petition for a writ of habeas corpus be denied, and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: January 24, 2013

cc: The Honorable Sean J. McLaughlin
United States District Judge